UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF MICHIGAN
REGIONAL COUNCIL OF
CARPENTERS' EMPLOYEE
BENEFITS FUND, et al.,

CASE NO. 17-CV-10816
HON. GEORGE CARAM STEEH

         Plaintiffs,

v.

INFINITY HOMESCAPES,
LLC, et al.,

         Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. 23)

### I. Overview

Plaintiff trustees of employer trust funds have brought this Employee

Retirement Income Security Act ("ERISA") suit for unpaid fringe benefits

owing against two companies, and their sole owner Jamey Woodson and

his wife, Josie Lewis.  Plaintiffs also include the Michigan Regional Council

of Carpenters United Brotherhood of Carpenters and Joiners of America

(the "Union") and six employees of Defendant Infinity Homescapes, LLC

("Homescapes").  Plaintiffs also brought claims under the Fair Labor

Standards Act ("FLSA") and related state law claims.  Now before the court is Plaintiffs' motion for summary judgment.

This matter had been scheduled for oral argument on March 29, 2018.  On March 28, 2018, Defendants Woodson and Lewis notified the court that they had filed a petition for bankruptcy and that an automatic stay pursuant to Section 362(a) of the Bankruptcy Code applied.  Based on the automatic stay, this court does not address the claims against the individual Defendants Woodson and Lewis.  On the date scheduled for oral argument, the court met with counsel for both sides in chambers to discuss the matter.  During the in chambers conference, defense counsel admitted to liability only on behalf of Defendant Homescapes and the parties agreed that they would submit a proposed order to that effect and agreed that it was unnecessary to put their agreement on the record. Thereafter, defense counsel e-mailed Plaintiffs' counsel that she agreed that Homescapes was liable for some fringe and wage benefits, but was not waiving her argument that the matter must be arbitrated or that judicial estoppel barred the action, and noted her intent to appeal.  Based on this procedural background, the court decides the pending motion based on the written submissions.

For the reasons set forth below, the court GRANTS Plaintiffs' motion as to liability only on ERISA and FLSA claims as to Defendant Homescapes, and DENIES summary judgment on the claim for the filing of fraudulent W-2s.

## II. Background

Plaintiffs are a collection of Michigan Carpenter Employee Benefit Funds (collectively "Funds"), six former employees of Homescapes, and the Union. Defendants are Homescapes, a company that performs residential and commercial carpentry construction work; Infinity Millworks ("Millworks"), which performs residential carpentry work; Woodson, the sole owner of Homescapes and Millworks; and his wife, Lewis. Lewis is an attorney who performs legal work for both companies. In addition, she handles administrative and secretarial work. In addition to being a named defendant, Lewis also represents all Defendants in this lawsuit.

Homescapes came into existence in 2016. Plaintiffs allege that Homescapes grossed over $500,000 in 2016, based on invoices of slightly less than $500,000 and $175,000 in change orders from one of Homescapes' largest jobs. Although Lewis testified at her deposition that the $175,000 was owing, Homescapes now claims the $175,000 sum was an estimate not of sales, but of expenses for two other projects.

On September 16, 2016, Homescapes executed a collective-bargaining agreement (the "CBA") with the Union. Following execution of the CBA, Homescapes employed, among others, the six named Plaintiffs in this lawsuit: (1) John Duval, (2) Brian Patterson, (3) Robert Swixx, (4) Carl Touchette, (5) Jeff Roettger, and (6) Damien Hirst. Also, in September, 2016, Homescapes suffered financial difficulties when general contractor, Thorndale Construction Services ("Thorndale"), failed to pay amounts owing.

Plaintiffs contend that Defendants' answers to interrogatories and deposition testimony establish that Defendants failed to pay wages, issued payroll checks on accounts with insufficient funds, unlawfully issued 1099s to workers, and issued incorrect W-2s. Indeed, in their answers to interrogatories, Defendants admit that Plaintiffs Roettger, Hirst, Swixx, Touchette, Patterson, and Duval worked for Homescapes during the time periods in late October, 2016 stated, and admitted that they were told not to cash their checks because of insufficient funds. (Doc. 23, Ex. G at PgID 801-804, Ex. C at 42, PgID 607). At his deposition, Woodson admitted that his workers were not paid wages or fringe benefits for that time period, but that he paid suppliers. (Doc. 23, Ex. B at PgID 592). An audit conducted by the Funds auditors confirmed that Homescapes failed to

make the required fringe benefit contributions. (Doc. 23, Ex. H). According to the audit, Homescapes owes $111,187.07. (Doc. 23, Ex. H at PgID 819). Homescapes also admits that some employees were issued 1099s, which are tax forms used to report income to independent contractors, because they were "minimizing" their tax liability. (Doc. 23, Ex. C at 37-38, PgID 606). Homescapes also admitted that it issued W-2s that were inaccurate because they included unpaid wages, and did not contain wages reported on the 1099s. (Doc. 23, Ex. C at 96, PgID 615).

Plaintiffs' Complaint alleges eleven counts. Count I seeks delinquent contributions under ERISA. Count II alleges failure to permit updated audit. Count II is now moot as an updated audit took place on December 1, 2017. Count III alleges breach of fiduciary duty under ERISA against Homescapes, Woodson, and Lewis. Count IV alleges violations of the Michigan Building Contract Fund Act ("MBCFA"), Mich. Comp. Laws § 570.151 *et seq.* Count V alleges federal minimum wage violations pursuant to the Fair Labor Standards Act ("FLSA"). Count VI alleges state minimum wage violations. Count VII alleges federal overtime violations pursuant to the FLSA. Count VIII alleges state overtime violations. Count IX alleges failure to pay wages in violation of Michigan law. Count X alleges failure to pay amount of dishonored checks pursuant to Mich.

Comp. Laws § 600.2952. Finally, Count XI alleges filing fraudulent W-2s in violation of 26 U.S.C. § 7434.

### III**. Standard of Law**

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all

reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## IV. Analysis

### A.    Arbitration

Defendants argue that this case must be dismissed because Plaintiffs have not exhausted the grievance procedure and arbitration set forth in Article XV of the CBA.  Upon review of the arbitration clause in the CBA and applicable law, Defendants' argument lacks merit.  First, the court considers Plaintiffs' claim for unpaid fringe benefit contributions under Section 502 of ERISA.  The Supreme Court's decision in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984) is dispositive on this issue.  In *Schneider*, as here, trustees of multi-employer trust funds brought an ERISA action against two companies for delinquent contributions as required by the trust agreement, as incorporated into the terms of the applicable collective bargaining agreement.  The Court held that the presumption of arbitrability did not apply to disputes between trustees and employers.  *Id.* at 372-73.  The Court then examined the trust agreement and collective bargaining agreement and found that neither evidenced an intent on the part of the parties to require arbitration of disputes between trustees and the employers.  *Id.*

This case presents an even stronger argument that the parties evidenced no intent to require arbitration between Plaintiff Trust Funds and Defendant Employers over delinquent contributions as the Trust Fund

specifically provides, "No matter respecting the foregoing, or any difference arising thereunder, or any matter involved in this Trust Agreement, shall be subject to the grievance procedure established in any Collective Bargaining Agreement."  (Doc. 1-2 at PgID 127).  Based on this express language in the Trust Agreement, Plaintiff Trust Funds are not subject to the grievance and arbitration procedures set forth in the CBA and may proceed with their ERISA claim for delinquent fringe benefit funds in this court.

The court turns now to the remaining claims to determine if those claims are subject to the grievance procedure set forth in the CBA and must be submitted to arbitration.  The court must first determine as a threshold matter whether an agreement creates a duty for the parties to arbitrate a particular grievance or claim. *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (court "may order arbitration of a particular dispute only where [it] is satisfied that the parties agreed to arbitrate *that dispute.*") (emphasis in original)).

This inquiry requires the Court to evaluate, first, whether a valid agreement to arbitrate exists between the parties and, second, whether the specific dispute at issue falls within the substantive scope of that

agreement. *Watson Wyatt & Co. v. SBC Holdings, Inc.,* 513 F.3d 646, 649

(6th Cir. 2008).

Here, Title XV of the CBA sets forth a grievance procedure. Section

15.1 provides:

> <u>Grievances</u>. Should differences of any kind arise between
> the employer and the Union as to the interpretation,
> application or claimed breach of any of the terms of this
> Agreement, all such differences shall be submitted to the
> grievance procedure herein provided.

(Doc. 23, Ex. E at PgID 765). The CBA then established a two-step

grievance procedure. As the last step in that process, Section 15.6

requires that any claim that cannot be settled or adjusted, is to be

submitted to arbitration. Having set forth the parties' arbitration

agreement, the court now considers the remaining claims to determine if

they are covered by the agreement and finds that they are not. Those

claims are: (1) unpaid wages under state law and the FLSA, (2) failure to

pay dishonored checks under state law, and (3) filing of fraudulent W-2s.

The grievance procedure set forth in the parties' CBA does not address

any such claims.

A brief review of Supreme Court precedent in this area is instructive.

In *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), the

Court held that worker's FLSA claims were not barred by their prior

submission of their grievance in arbitration procedures because Congress intended to give individual workers their right to bring minimum wage claims in court, and FLSA rights are independent of the collective bargaining process. *Id.* at 745. Although *Barrentine* stated the proposition broadly that employees could not bargain away their right to bring statutory rights established by Congress in court and instead be required to arbitrate such claims, the Court has since retreated on that sweeping proposition and has since held that employees can be bound by arbitration agreements, even when they involve statutory rights, when their waiver of such rights is clearly established in their collective-bargaining agreement. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009) ("collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law"). Although recent precedent has taken a more favorable and expansive view of arbitration, even this precedent requires that the waiver of statutory rights to judicial proceedings must be "clear and unmistakable" before an arbitration requirement will be enforced. There is no "clear and unmistakable" waiver of Plaintiffs' FLSA rights here, nor of Plaintiffs' state law claim for failure to pay dishonored check, or filing of fraudulent W-2s.

Defendants' reliance on *Ramirez v. Bridgestone Retail Operations, LLC*, No. 12-cv-14480, 2013 WL 1507221, (E.D. Mich. Apr. 12, 2013) is misplaced. In that case, the arbitration clause was much more expansive than the clause at issue here. Specifically, the clause in *Ramirez* provided, "[a]ny other matters arising from or concerning the employment relationship . . . including . . . without limitation: [c]ompensation, bonus, and wage and hour claims under federal, state, or local statutes . . . including the Fair Labor Standards Act." *Id.* at *3. There, the court not only referenced wage and hour claims as falling within the gambit of the arbitration clause, it specifically referenced state and federal statutes and expressly mentioned the FLSA by name. No comparable breadth of the arbitration requirement exists here. By contrast, the arbitration clause here applies to "the interpretation, application or claimed breach of any of the terms of this Agreement." None of Plaintiffs' claims here involve a breach of the CBA; rather, they allege violations of federal and state statutes. Accordingly, the court rejects Defendants' argument that Plaintiffs' claims are subject to arbitration.

Just as federal law requires the court to conclude that Plaintiffs' ERISA and FLSA claims are not subject to the CBA's grievance procedures and arbitration requirement, the court reaches the same

conclusion as to Plaintiffs' state law claims.  Under Michigan law, the

question of whether a controversy is arbitrable represents a question of

law for the courts.  *Madison Dist. Pub. Sch. v. Myers*, 247 Mich. App. 583,

594–95 (2001).  "To ascertain the arbitrability of an issue, the court must

consider whether there is an arbitration provision in the parties' contract,

whether the disputed issue is arguably within the arbitration clause, and

whether the dispute is expressly exempt from arbitration by the terms of

the contract."  *Id.* at 595.  Here, Plaintiffs seek to recover under Michigan

statutes, not for breaches of the CBA.  The grievance and arbitration

provisions of the CBA do not address these statutory rights, and thus,

these matters are ripe for judicial review and are not subject to arbitration.

## B.    Judicial Estoppel

Defendants argue that proceedings in an unrelated lawsuit in Kent

County Circuit Court requires that this matter be arbitrated under the

theory of "judicial estoppel."  That lawsuit is pending between Thorndale

against Homescapes and the Union.  In that case, the circuit court granted

the Union's motion for summary disposition of Homescape's cross-

complaint on the grounds that the matter was covered by the CBA's

mandatory grievance and arbitration requirements.  Defendants have not

demonstrated that that matter has any similarity to the case pending here

which involves federal ERISA and FLSA claims, and related state law claims deriving from statutory law. Accordingly, the court summarily rejects Defendants' claim that "judicial estoppel" requires that this matter be submitted to arbitration.

**C.     Fringe Benefit Contributions under ERISA**

Plaintiffs seek to recover unpaid fringe benefit contributions from Homescapes which are owing under the Funds' Trust agreements and the CBA pursuant to ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2) & 1145.[1] Plaintiffs seek delinquent contributions, collection costs, interest, attorney fees, and liquidated damages, which are all recoverable pursuant to § 1132(g)(2). In their Complaint, Plaintiffs sought to compel an audit under ERISA. That audit occurred in December, 2017. Based on the audit, Plaintiffs contend they are entitled to $111,187.07 in delinquent contributions, including liquidated damages and interest. In addition to the audit, Plaintiffs rely upon Defendants' answers to interrogatories and Woodson's deposition testimony where he admitted that not all fringe benefits were paid.

---

[1] Defendants argue that Millworks was not a party to the CBA and thus, cannot be liable for unpaid fringe benefit contributions or unpaid wages. In their motion, Plaintiffs have not articulated a basis for seeking summary judgment for unpaid fringe benefits against Millworks pursuant to ERISA.

In response, Homescapes argues that the fringe benefit compensation calculations as set forth in Plaintiffs' audit are incorrect because they included four employees who were allegedly terminated before the CBA went into effect on September 16, 2016, and two other workers whom it claims never joined the Union. (Doc. 29, Ex. F). In support of these assertions, Homescapes relies upon Woodson's affidavit and handwritten notes purported to be business records. Homescapes also alleges that it hired four employees prior to the effective date of the CBA. This argument appears baseless as the CBA would cover them once it went into effect. (Doc 1-1, CBA at Article II, 2.2 at PgID 43).

The court must also reject Homescapes' argument that certain employees were not Union members, and thus, not entitled to fringe benefit contributions. The CBA requires the employer to make contributions to the various Trust Funds for all "covered Employees." (Doc. 1-1, Art. X of CBA, PgID 53). The CBA defines "Coverage" as "It is specifically agreed and understood that this Agreement exclusively governs the wages, terms, and conditions of employment of all Carpenters performing work of any description coming under the jurisdiction of the [Union], employed by the Employer who is engaged in commercial, industrial, institutional and heavy construction work." *Id.* Art. II, 2.2 of

CBA, at PgID 43. The CBA further provides that "the terms 'carpenter', 'worker' or 'Employee' shall be used interchangeably." *Id.* The Sixth Circuit has held that similar language in a collective bargaining agreement requires contributions to be made on behalf of all employees without distinguishing between union and non-union members. *See Teamsters' Local 348 v. Kohn Beverage*, 749 F.2d 315, 318 (6th Cir. 1984). Further, "[t]he absence of language distinguishing union and non-union employees indicates that the agreement covers all employees." *Id.* at 318. Moreover, construing the language in the CBA as requiring Homescapes to make fringe benefit contributions for all employees performing work covered by the CBA and not just those employees who are union members is consistent with the National Labor Relations Act ("NLRA") which makes it illegal for an employer to discriminate against union and non-union employees in the award of fringe benefits. *See* Section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3); *Trustees of the Operating Engineers' Local 324 Pension v. Glencorp, Inc.*, 178 F. Supp. 3d 600, 606 (E.D. Mich. 2016).

"Under Sixth Circuit precedent, where an ERISA fund plaintiff has provided proof of an employer's failure to pay fringe benefit contributions on behalf of its employees for work covered by a collective bargaining

agreement, the burden shifts to the employer to produce evidence as to what work is not covered." *Plumbers Local 98 Defined Ben. Pension Fund v. M & P Master Plumbers of Michigan, Inc.*, 608 F. Supp. 2d 873, 881 (E.D. Mich. 2009) (citing *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692, 696–97 (6th Cir.1994)). As noted in *M & P Master Plumbers*, "ERISA Section 209, 29 U.S.C. § 1059, mandates that an employer maintain records with respect to each of its employees, sufficient to determine what benefits are owing to them." Under the "burden-shifting" approach set out in *Grimaldi*, where an employer clearly violates ERISA by failing to maintain adequate records as required by 29 U.S.C. § 1059(a)(1), the court found that "the penalty must fall upon the person who had legal responsibility to maintain those records." *Id.* at 695. Thus, "[a]n employer cannot escape liability for his failure to pay his employees the wages and fringe benefits due to them under the law by hiding behind his failure to keep records as statutorily required." *Id.* at 697.

Although Homescapes' proofs are sparse, it has come forward with some evidence that certain employees were terminated prior to the execution of the CBA. Also, Homescapes has submitted paychecks which allegedly demonstrate that, Cooke, Swix, Hirst and Livernois were paid for much of the claimed insufficiency. (Doc. 29, Ex. L and M). Based on this

evidence, there is some question of fact as to the total amount of fringe benefit contributions owing. Accordingly, the court shall enter summary judgment as to liability only and hold that Plaintiffs are entitled to delinquent fringe benefit contributions, interest, liquidated damages, and attorney fees, but leave open the question of damages.

**D.    FLSA Claims**

Plaintiffs also move for summary judgment for minimum wage and overtime violations under the FLSA and similar state statutes, Mich. Comp. Laws § 408.471 and 408.411. However, Plaintiffs have not discussed the Michigan statutes in their brief, but limit their discussion solely to the FLSA claims. The court does so likewise. There is no dispute that Homescapes did not pay all of the wages owing to its employees. Homescapes seeks to avoid liability for FLSA violations by arguing their company lacked enough earnings to be covered by the statute.

In order to come within the ambit of the FLSA, an employer must have "annual gross volume of sales made or business done [in an amount] not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). Homescapes admits that it had gross sales in 2016 in the amount of $448,929.01. (Doc. 25 at PgID 849). Plaintiffs also rely on Lewis' deposition testimony that 2016 gross sales also included another $175,000 owed by Thorndale, one

of Homescapes' largest jobs.  In its response brief, Homescapes asserts that Lewis was actually referring to a Chick-Fil-A project which amounted to only $61,800.  The law is well settled in the Sixth Circuit that "a party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony."  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006).  Here, Homescapes has not even submitted an affidavit, but attempts to avoid the effect of Lewis' deposition testimony by attempting to mischaracterize it in its response brief.  At this stage of the litigation, Homescapes is bound by Lewis' deposition testimony.  As such, its gross sales for 2016 exceed $500,000, and Homescapes is a covered enterprise under the FLSA.

Homescapes also argues that it cannot be liable under the FLSA because it did not act willfully.  Willfulness is not required under the FLSA, except to elongate the statute of limitations period to three years.  29 U.S.C. § 255(a); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002).

## E.    MBCFA Claim

Plaintiffs also seek summary judgment on their claim under the Michigan Building Contract Fund Act ("MBCFA").  Although the MBCFA is a penal statute, the Michigan Supreme Court has recognized that a civil

cause of action may be brought for its violation. *B.F. Farnell Co. v. Monahan*, 377 Mich. 552, 555 (1966). To establish a claim pursuant to the MBCFA, a plaintiff must show: "(1) that the defendant is a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5) that the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project." *Livonia Bldg. Materials Co. v. Harrison Const. Co.*, 276 Mich. App. 514, 519 (2007). Where the plaintiff can demonstrate that the defendant received payment on a construction project, but did not pay laborers, subcontractors, materialmen, or others entitled to payment, there is a "reasonable inference of appropriation." *BC Tile & Marble Co., Inc. v. Multi Bldg. Co., Inc.*, 288 Mich. App. 576, 588 (2010). Defendants can rebut this inference by presenting evidence that they did not divert funds in contravention of the MBCFA. *Livonia Building*, 276 Mich. App. at 521.

Here, Plaintiffs are entitled to summary judgment on their MBCFA claims against Homescapes as Plaintiffs have established their prima facie

case, which Homescapes has not rebutted.  Plaintiffs have shown that Homescapes is a contractor and that Homescapes was paid on two Michigan construction projects (Doc. 23, Ex. I and J), the Timber Trail project in the amount of $34,001, and the Woodridge project in the amount of $52,955.  Homescapes admits that it did not pay the fringe benefits owing for the employees on these projects, but argues that Plaintiffs have not met their prima facie case because they have not shown that Woodson kept the funds for his personal use or to keep his business afloat, and have not shown that non-allowable parties were paid.  However, Homescapes has mischaracterized the burden of proof.  Plaintiffs are entitled to an inference of misappropriation based on proof that Homescapes was paid on specific projects but they were not paid monies due and owing to them.  The burden then shifts to Homescapes to rebut the prima facie case.  Homescapes has made no attempt to indicate what amounts were properly paid and should be credited towards the amount Plaintiffs claim is due and owing. No form of accounting has been provided to the Court.  *See Trustees of Mich. Reg'l Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc.*, 408 F. Supp. 2d 370, 373 (E.D. Mich. 2005).  Under these circumstances, Plaintiffs are entitled to summary judgment on their MBCFA claim against Homescapes.

## F.    Dishonored Checks

Plaintiffs also seek to recover under Mich. Comp. Laws § 600.2952 which provides civil remedies in favor of the victim of a dishonored check. Section 600.2952 "relates to any person or entity given a check that is dishonored by the drawee (i.e., the bank)." *Michigan Deferred Presentment Servs. Ass'n v. Comm'r of Office of Fin. & Ins. Regulation*, 287 Mich. App. 326, 334 (2010).  There is no dispute that Homescapes provided its employees with paychecks that were dishonored for lack of sufficient funds.  Homescapes argues that Plaintiff employees are to blame for attempting to cash paychecks which they should have known would not clear.  Homescapes' argument lacks merit and summary judgment shall enter for Plaintiffs on their claim for civil remedies for dishonored checks.

## G.    False W-2s

Lastly, the court considers whether Homescapes is liable for presenting false W-2s.  26 U.S.C. § 7434 provides:

> **(a) In general.**--If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

26 U.S.C. § 7434. At her deposition, Lewis admitted that W-2s were inaccurate because they included wages that some employees were not paid. (Doc. 23, Ex. C at 96, PgID 615). However, Lewis also testified that corrected W-2s were issued, *id.*, and Homescapes has submitted amended W-2s for four employees. (Doc. 29, Ex. N). Under these circumstances, a question of fact exists as to whether the inaccurate W-2s were willfully filed and Plaintiffs are not entitled to summary judgment on their claim for the filing of fraudulent W-2s.

## H.    Mitigation of Damages

Defendants argue that Plaintiffs failed to mitigate their damages by presenting paychecks they had been told would not clear, or somehow could have lessened their damages in connection with unpaid wages and fringe benefits. Defendants rely on authority governing contract and tort claims under Michigan law. This authority does not apply to claims for dishonored checks or wage and hour claims under state and federal law.

## I.    Millworks

Because Plaintiffs have not specifically addressed Millworks' liability as to any of their claims, the court will likewise refrain from doing so.

## V. Conclusion

For the reasons set forth above, IT IS ORDERED that Plaintiffs' motion for summary judgment (Doc. 23) is GRANTED in part as follows:

Plaintiffs' motion for summary judgment is GRANTED as to liability only on Count I for delinquent contributions under ERISA against Defendant Homescapes, and is awarded interest, liquidated damages, and attorneys' fees.

Plaintiffs' motion for summary judgment is GRANTED as to liability for federal minimum wage violations under the FLSA (Count V) and federal overtime violations under the FLSA (Count VII) as to Defendant Homescapes.

Plaintiffs' motion for summary judgment is GRANTED as to liability for violations of the MBCFA (Count IV) against Defendant Homescapes.

Plaintiffs' motion for summary judgment for failure to pay amount of dishonored checks (Count X) is GRANTED as to liability against Defendant Homescapes.

Plaintiffs' motion for summary judgment for the filing of fraudulent W-2s (Count XI) is DENIED.

Based on the entry of the automatic stay, the court has not

addressed any of the claims against Woodson and Lewis individually.

**IT IS SO ORDERED.**

Dated:  April 9, 2018

<div align="right">

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

</div>

<div style="border:1px solid black">

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 9, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

</div>